UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CAPT MEHDI A. AKACEM, USN,
*in his personal capacity and as next friend to*
D. A., *a minor child*, and
M. A., *a minor child*,

    Plaintiffs,

v.

JUANITA E. GARCIA,

    Defendant.

Civil Action No. TDC-22-3377

## MEMORANDUM OPINION

Plaintiffs Captain Mehdi A. Akacem, an officer in the United States Navy, and his minor children, D.A. and M.A., have filed a civil action against Defendant Juanita E. Garcia, a Family Advocacy Specialist with the United States Coast Guard, in which they allege federal constitutional claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), as well as a common law defamation claim. Defendant has filed a Motion to Dismiss the Amended Complaint, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED, and this case will be DISMISSED.

## BACKGROUND

In August 2015, Akacem married Kathryn McCormack, a lieutenant commander in the United States Coast Guard ("Coast Guard" or "USCG"). They have two minor children, D.A. and M.A. Akacem alleges that the marriage "started deteriorating almost immediately" after the wedding. Am. Compl. ¶ 15, ECF No. 19. Beginning in October 2015, Akacem and McCormack

maintained a home in Pensacola, Florida, where Akacem was stationed. McCormack resided there while she was on a leave of absence from August 2016 to April 2017, but she then moved to St. Louis, Missouri pursuant to Coast Guard orders. According to Akacem, the deterioration of their marriage accelerated after McCormack relocated.

In June 2018, Akacem's mother, Sandra Akacem ("Ms. Akacem"), visited Pensacola while both Akacem and McCormack were present. According to Akacem, during that visit, McCormack physically charged at his mother, and Akacem then stepped in between them to "absorb[] the brunt of McCormack's assault." *Id.* ¶ 16. Akacem alleges that the incident took place in the presence of D.A., who was then three years old.

In January 2019, in order to seek family therapeutic services from the Navy, Akacem filed a report with the Navy's Family Advocacy Program in which he described McCormack's alleged assault in June 2018. As McCormack was an officer in the Coast Guard, the Navy submitted Akacem's report to the Coast Guard for investigation and adjudication. The Coast Guard directed Defendant Juanita E. Garcia, a USCG Family Advocacy Specialist, to investigate Akacem's report. Akacem alleges that in conducting her investigation, Garcia failed to interview Ms. Akacem regarding the incident, produced a report minimizing the severity of the June 2018 incident as involving only a poke in the chest, compiled public filings regarding McCormack's divorce case against Akacem, and suggested to McCormack that she should file an allegation of emotional abuse against Akacem.

On August 12, 2019, Garcia presented her findings to a USCG Incident Determination Committee ("IDC") charged with adjudicating whether McCormack had engaged in domestic abuse, a finding of which would have resulted in a Coast Guard order that McCormack participate in therapeutic remedies. However, the IDC concluded based on Garcia's presentation that

Akacem's report did not meet the criteria for intimate partner physical abuse. Akacem alleges that after the IDC proceeding, McCormack used the IDC's findings against Akacem in their divorce case to obtain sole legal custody of D.A. and M.A.

On December 31, 2022, Akacem filed the present action on behalf of himself, D.A., and M.A. against Defendants Garcia and the United States of America ("the Government"). The original Complaint alleged, in Count 1, a *Bivens* claim against Garcia for denial of due process under the Fifth Amendment to the United States Constitution, and in Count 2, a negligence claim against both Garcia and the Government under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) (2018).

On June 22, 2023, Plaintiffs filed an Amended Complaint against Garcia only. Count 1 of the Amended Complaint alleges a *Bivens* claim against Garcia for deliberate indifference to Plaintiffs' health and safety, based on her alleged failure to properly investigate Akacem's report of abuse, in violation of Plaintiffs' substantive and procedural due process rights under the Fifth Amendment. Count 2 alleges a *Bivens* claim against Garcia for sex discrimination in violation of the equal protection component of the Due Process Clause of the Fifth Amendment, based on the allegation that during her investigation, Garcia intentionally promoted McCormack's interests because McCormack is a woman. Count 3 alleges a claim of common law defamation against Garcia, without reference to the FTCA, based on the allegation that Garcia made defamatory statements about Akacem to the IDC that tended to portray him as emotionally abusive. Pursuant to 28 U.S.C. § 2679(d)(1), the Government has filed a certification by the United States Attorney for the District of Maryland stating that Garcia "was acting within the scope of her employment as an employee of the United States at the time of the incidents out of which the Plaintiff's claims

arose." Joint Record ("J.R.") 1, ECF No. 28-1. Accordingly, the Government seeks to be substituted in place of Garcia as the defendant in Count 3.

## DISCUSSION

In the Motion to Dismiss, Garcia argues that the *Bivens* claims in Counts 1 and 2 are: (1) foreclosed by recent United States Supreme Court precedent; and (2) barred by the statute of limitations. Garcia further argues that even if these claims were viable, she was never properly served, and she is entitled to qualified immunity.

As to the defamation claim in Count 3, Defendants argue that: (1) because Garcia was acting within the scope of her employment, she is immune from suit under the Westfall Act, 28 U.S.C. § 2679, and thus is not the proper defendant; (2) because the Government is the proper defendant, the claim is an FTCA claim barred by Plaintiffs' failure to exhaust applicable administrative remedies; (3) the Government has not waived sovereign immunity over defamation claims; and (4) the claim is barred by the applicable statute of limitations.

### I. Legal Standards

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. Rule 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to allege sufficient facts to establish subject matter jurisdiction. On such a motion, the allegations in the complaint are assumed to be true, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*,

585 F.3d at 192. The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II. *Bivens*

Defendants argue that the *Bivens* claims in Counts 1 and 2 must be dismissed based on the United States Supreme Court's ruling in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), which significantly narrowed the availability of *Bivens* claims. In *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that the plaintiff had a cause of action for damages under the Fourth Amendment based on a search and an arrest allegedly conducted without probable cause and the alleged use of unreasonable force during the encounter. *Id.* at 389, 397. In *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court held that a former congressional staff member who asserted a sex discrimination claim under the Fifth Amendment had an implied cause of action for damages. *Id.* at 231, 248-49. In *Carlson v. Green*, 446 U.S. 14

5

(1980), the Supreme Court held that the estate of a federal prisoner who died in custody had an implied cause of action for damages under the Eighth Amendment based on alleged deliberate indifference to serious medical needs. *Id.* at 16 & n.1, 18-19, 25.

### A.   *Egbert v. Boule*

In 2022, the Supreme Court held in *Egbert* that a two-step inquiry governs whether a *Bivens* claim may proceed. *See Egbert*, 142 S. Ct. at 1803. First, a court asks whether the case presents "a new *Bivens* context" in that it is "meaningful[ly]" different from the three cases in which the Court has implied a damages action. *Id.* at 1803 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017)). Among the potential differences previously identified as relevant to this inquiry are:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar v. Abbasi*, 582 U.S. 120, 139-40 (2017). Second, "if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*, 582 U.S. at 136).

Here, Garcia argues that pursuant to *Egbert*, the *Bivens* claims in Counts 1 and 2 should be dismissed because they arise in new *Bivens* contexts, and special factors counsel against extending *Bivens* to those contexts. Plaintiffs agree that Count 1, the Fifth Amendment due process claim, arises in a new *Bivens* context, but they contend that no special factors counsel against extending *Bivens* to Count 1. Plaintiffs argue that Count 2, the Fifth Amendment equal protection claim, does not arise in a new *Bivens* context because it is substantially identical to the claim recognized in *Davis*.

6

### B.     New *Bivens* Context

The Court agrees with the parties that Count 1 arises in a new *Bivens* context. In *Annappareddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021), the United States Court of Appeals for the Fourth Circuit recognized that "*Bivens* has never been extended to a Fifth Amendment due process claim." *Id.* at 134. Here, Count 1 seeks to assert a cause of action for a violation of due process rights under the Fifth Amendment. It also seeks to advance such a claim against a USCG Family Advocacy Specialist for failing to conduct an investigation in a way that protected a service member from domestic abuse and thus would permit a cause of action against a set of defendants, and pursuant to a legal theory, that has not previously been found to support a *Bivens* claim. *See id.* (noting that a Fifth Amendment due process claim asserted under *Bivens* that "seeks to hold accountable a new set of defendants" from those previously subject to *Bivens* liability constituted a "new context for *Bivens* purposes"). Count 1 therefore plainly presents a new *Bivens* context. *See Egbert*, 142 S. Ct. at 1803.

The Court also concludes that Count 2 arises in a new *Bivens* context. Akacem argues that the equal protection claim in Count 2 is the same type of claim at issue in *Davis*, in which the plaintiff, an administrative assistant to a congressman, asserted that she was terminated based on sex discrimination in violation of the equal protection component of the Fifth Amendment's Due Process Clause. *Davis*, 442 U.S. at 230-31. Although Count 2 asserts a *Bivens* claim based on the same constitutional right, the context—alleged favoritism of a woman during an investigation by a military Family Advocacy Program specialist—is markedly different. In *Doe v. Meron*, 929 F.3d 153 (4th Cir. 2019), the plaintiff asserted *Bivens* claims arising from an investigation pursuant to the United States Department of Defense ("DOD") Family Advocacy Program into whether the plaintiff had abused and neglected his minor children. *See id.* at 161-62. The plaintiff asserted

7

claims against a clinical social worker in the Family Advocacy Program and other DOD officials under the Fourth and Fifth Amendments, including a claim of race discrimination in violation of the equal protection component of the Fifth Amendment. *Id.* at 162. In concluding that the plaintiff's Fifth Amendment *Bivens* claims presented a new context as compared to *Davis*, the Fourth Circuit found that there were "meaningful differences between the rank of the officers involved" in *Doe* as compared to *Davis*, as well as between "the legal mandate[s] under which the officers were operating." *Id.* at 169. Likewise, Count 2 asserts a damages claim against a military Family Advocacy Program specialist engaged in an investigation into possible domestic abuse by a military officer against a spouse, as opposed to a claim of a discriminatory termination of employment by a congressional staff member against a member of Congress. Where Akacem's Fifth Amendment equal protection claim is made against a significantly lower-level employee in a different branch of government, and the claim arose in the different factual context of domestic abuse investigations and has nothing to do with employment discrimination, the Court concludes that Count 2 arises in a new *Bivens* context from that of *Davis*. *See id.*; *see also Mays v. Smith*, 70 F.4th 198, 203-04 (4th Cir. 2023) (holding that a prison inmate's claim against Bureau of Prisons officials alleging a racially discriminatory termination from a prison job in violation of equal protection rights under the Fifth Amendment arose in a new *Bivens* context as compared to *Davis*, in part because it was asserted against a "new category of defendants" consisting of prison officials in the "different legal and factual context" of prison litigation).

C. **Special Factors**

Having found that both Counts 1 and 2 arise in new *Bivens* contexts, the Court next examines whether special factors reveal that the courts are "arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at

1803. Among the special factors to consider are whether the claim requires scrutiny of new categories of conduct and a new category of defendants; whether it would involve judicial intrusion into issues that intersect with a statutory scheme delegating authority to those in another branch of government; whether there is an "alternative remedial structure" that affords some form of relief; whether Congress has frequently legislated in the area; and whether the new basis for liability would impose a substantial burden on government officials. *See Mays*, 70 F.4th at 205-06. "Central to this inquiry are 'separation-of-powers principles.'" *Id.* (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).

The Fourth Circuit has applied such factors in finding that separation-of-powers issues counsel against an extension of *Bivens*. For example, in *Annappareddy*, the Fourth Circuit found that special factors weighed against extending *Bivens* to permit a Fifth Amendment due process claim against a new category of defendants—federal prosecutors and investigators—for alleged misconduct in federal criminal cases such as falsifying and destroying evidence. *Annappareddy*, 996 F.3d at 134. The court reasoned that such claims would lead to inquiries "into the evidence available to investigators, prosecutors, and the grand jury" that would "pose the kind of 'risk of intrusion on executive-branch authority to enforce the law and prosecute crimes that counsels against implying a cause of action for damages." *Id.* at 134-35 (quoting *Farah v. Weyker*, 926 F.3d 492, 501 (8th Cir. 2019)). Similarly, in *Doe*, the Fourth Circuit held that where the plaintiff's *Bivens* claims relating to the DOD Family Advocacy Program investigation "arose in a military context," and where there was an administrative claims process that provided an alternative remedial scheme, the special factors inquiry "counsel[ed] against extension" of *Bivens*. *See Doe*, 929 F.3d at 169-70.

Here, the same kind of separation-of-powers concerns weigh against extending *Bivens* to encompass the claims asserted in Counts 1 and 2 of the Amended Complaint. First, extending *Bivens* to a new class of government defendants in the form of Family Advocacy Program specialists engaged in investigations may create after-the-fact inquiries intrusive upon executive branch authorities as the specific conduct of governmental investigations are scrutinized. *See Annappareddy*, 996 F.3d at 134-35. More specifically, the separation-of-powers concerns are heightened because Plaintiffs' claims arise "in a military context" in that they consist of a military service member's grievances relating to an investigation by an employee of a military branch into conduct by a different service member. *See Doe*, 929 F.3d at 169-70. Although Plaintiffs argue that only those actions that involve "performing a military function" should be excluded from potential *Bivens* liability, Opp'n at 12, ECF No. 24, in *Doe*, the court did not impose such a requirement and instead held, under similar facts, that claims relating to the conduct of a Family Advocacy Program investigation arose "in a military context" such that the special factors inquiry weighed against an extension of *Bivens*. *See* Doe, 929 F.3d at 169. Furthermore, the IDC proceedings in question here are uniquely military in nature and arise out of a statutory grant of authority to military law enforcement officials to investigate incidents of domestic violence. *See* 10 U.S.C. § 1058(b) (2018) (providing for the convening of a family advocacy committee to investigate such situations); 32 C.F.R. §§ 61.3, 61.5(d)(6)(i) (2022) (pursuant to the authority provided by 10 U.S.C. § 1058(b), defining IDCs and providing for the appointment of members of IDCs in support of Family Advocacy Programs). The Court therefore concludes that separation-of-powers concerns, particularly the fact that the claims in Counts 1 and 2 arise "in a military context," weigh against the extension of *Bivens* to this new context.

Finally, the Court notes that there also appear to be alternative remedial structures to address the grievances identified in Counts 1 and 2. In *Mays*, in which a federal prison inmate sought to extend *Bivens* to permit constitutional claims against prison officials relating to his termination from a prison job, the Fourth Circuit concluded that because federal inmates possessed an "alternative remedial structure" in the form of the BOP's Administrative Remedy Program by which the grievances could be addressed, it was for "Congress to decide whether to 'augment[]' any existing remedial scheme with a damages remedy." *Mays*, 70 F.4th at 206 (quoting *Tun-Cos v. Perrotte*, 922 F.3d 514, 527 (4th Cir. 2019)).

Here, Plaintiffs acknowledge at least two mechanisms to address such grievances: an investigation by the Inspector General of the Department of Homeland Security ("DHS"), of which the Coast Guard is a component agency, and an appeal of the determination by the IDC. First, at the relevant time, a senior official designated by the DHS Inspector General had the authority to "receive and review complaints and information from any source alleging abuses of civil rights and civil liberties by employees or officials of [DHS]" and to initiate investigations of such alleged abuses. 5 U.S.C. App. 3 § 8I(f)(2)(B), (C) (2018). DHS could then take corrective action in response to a report by the DHS Inspector General. *See id.* § 8I(f)(2)(H)(ii) (ensuring that the DHS "Inspector General publicizes and provides public access to information regarding— . . . the status of corrective actions taken by [DHS] in response to Office of the Inspector General reports"). At least one United States Court of Appeals has concluded that an investigation by the DHS Inspector General constitutes an alternative remedial structure militating against extending *Bivens*. *See Pettibone v. Russell*, 59 F.4th 449, 456 (9th Cir. 2023) (describing the DHS Inspector General "grievance procedure" as "comparable to the remedy deemed adequate in *Egbert*"). Second, Plaintiffs may both request reconsideration of the IDC's determination and appeal the denial of

11

such a request to the Commandant of the Coast Guard. *See* U.S. Coast Guard, Commandant Instr. 1752.1, Family Advocacy Program (FAP) (Aug. 14, 2014), Enclosure (2) at 7-8 (describing the process to "request a reconsideration" of the IDC's determination and providing for an "appeal to [the] Commandant" if the appellant is "not satisfied with the [IDC's] response").

Although Plaintiffs dispute the adequacy of these procedures and argue that IDC determinations are "practically unreviewable," Opp'n at 10, *Egbert* recognized that the Supreme Court has never required a *Bivens* alternative to "afford rights to participation or appeal," to provide a right to judicial review, or to be as effective as a damages remedy. *Egbert*, 142 S. Ct. at 1806-1807. Rather, an alternative remedial scheme weighs against the extension of *Bivens* if it provides safeguards to deter misconduct and prevent constitutional violations "from recurring." *Id.* at 1806. Under this standard, these alternative means, though not necessarily sufficient on their own, further support the Court's determination that special factors weigh against an extension of *Bivens* to Plaintiffs' claims.

In summary, the Court concludes that Counts 1 and 2 arise in new *Bivens* contexts, and that special factors weigh against extending the *Bivens* remedy to such contexts. Therefore, the Court will dismiss Counts 1 and 2 for failure to state a claim. The Court thus need not and will not address Defendants' alternative arguments for dismissal of Counts 1 and 2.

### III. Defamation

In Count 3, Plaintiffs assert a common law defamation claim against Garcia, an employee of the Coast Guard. The Government, however, has a filed a certification by United States Attorney Erek L. Barron, pursuant to the Westfall Act, 28 U.S.C. § 2679, stating that "with respect to the allegations in the Complaint," Garcia "was acting within the scope of her employment as an

employee of the United States at the time of the incidents out of which the Plaintiff's claims arose." J.R. 1.

### A. Scope of Employment

Under the Westfall Act, federal employees are immune from suit for "negligent or wrongful act[s] or omission[s]" committed "while acting within the scope of [their] office or employment." 28 U.S.C. § 2679(b)(1); *Maron v. United States*, 126 F.3d 317, 321 (4th Cir. 1997). When a tort claim is asserted against a federal employee, the Attorney General, through the relevant United States Attorney, issues a certification stating whether they were acting within the scope of their employment when the allegedly tortious acts occurred. *See* 28 U.S.C. § 2679(d); *Maron*, 126 F.3d at 321. The United States is then "substituted as the sole defendant," and "the plaintiff's sole route for recovery is the [FTCA]." *Maron*, 126 F.3d at 321. Plaintiffs may challenge the Government's certification, but they bear the burden to show that the federal employee was acting outside the scope of employment under the law of the state in which the alleged tort occurred. *Id.* at 323–24.

Although Plaintiffs challenge the Government's certification, the Court finds that the factual allegations in the Amended Complaint can support only the conclusion that Garcia was acting within the scope of her employment. "When conducting a scope of employment analysis under the Westfall Act, courts generally apply the law of the state where the conduct occurred." *Doe*, 929 F.3d at 164. Although Plaintiffs argue that Maryland law should apply, the Court agrees with the Government that where the IDC convened, and Garcia presented her findings, in Texas, the conduct underlying in the defamation claim occurred in Texas.

Under Texas law, "an employer is liable for its employee's tort only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business

13

and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). "[F]or an employee's acts to be within the scope of employment, 'the conduct must be of the same general nature as that authorized or incidental to the conduct authorized.'" *Id.* (quoting *Smith v. M Sys. Food Stores, Inc.*, 297 S.W.2d 112, 114 (Tex. 1957)). In describing Garcia's allegedly wrongful conduct, Plaintiffs state that Garcia was instructed by the Coast Guard to investigate the allegation of domestic abuse, and that Garcia interviewed persons of interest to the investigation, documented her investigation, and presented her findings to the IDC. According to the Amended Complaint, the allegedly defamatory statements were all made to the IDC, including when Garcia presented "deliberately one-sided evidence tending to portray CAPT Akacem as emotionally abusive." Am. Compl. ¶ 47. As Garcia's statements to the IDC as part of her presentation were of the "same general nature as that authorized or incidental" to the work of a military Family Advocacy Specialist, *see Minyard Food Stores, Inc.*, 80 S.W.3d at 577, and were plainly part of Garcia's assignment to investigate Akacem's claim and report on her findings to the IDC, Plaintiffs have not met their burden to show that Garcia's allegedly defamatory statements were made outside the scope of her employment, and therefore cannot prevail in challenging the Government's certification under the Westfall Act. The United States will therefore be substituted in place of Garcia as the defendant in Count 3.

### B.    Sovereign Immunity

The United States is immune from suit unless it has expressly waived sovereign immunity. *Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA provides a limited waiver of sovereign immunity to permit a suit for damages against the United States for "personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States,

if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §§ 1346(b)(1), 2674. This waiver of sovereign immunity is subject to certain exceptions. *See id.* § 2680. As relevant here, the FTCA does not waive sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, [or] slander . . . ." *Id.* § 2680(h). Based on the exception relating to libel or slander, a tort claim "in the heartland of the tort of defamation" is barred by § 2680(h). *Talbert v. United States*, 932 F.2d 1064, 1066-67 (4th Cir. 1991) (quoting *Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982)). As the Government has not waived its sovereign immunity as to defamation claims, Count 3 will be dismissed for lack of subject matter jurisdiction.

### C.   Statute of Limitations

In the alternative, the defamation claim in Count 3 must also be dismissed as untimely under any relevant statute of limitations. Applying either Maryland law, as Plaintiffs urge, or Texas law, as Defendants suggest, the statute of limitations for a defamation claim is one year. *See* Md. Code Ann., Cts. & Jud. Proc. § 5–105 (West 2020) ("An action for assault, libel, or slander shall be filed within one year from the date it accrues."); Tex. Civ. Prac. & Rem. Code Ann. § 16.002 (West 2023) ("A person must bring suit for . . . libel [or] slander . . . not later than one year after the day the cause of action accrues.").

According to the Amended Complaint, Garcia made the allegedly defamatory statements at the IDC proceeding at which she presented the results of her investigation, which took place on August 12, 2019. The original Complaint was filed on December 31, 2022, over three years after the defamation claim accrued. Even accepting Plaintiffs' argument, made in relation to the *Bivens* claims, that Akacem was not on notice of Garcia's allegedly false statements to the IDC until April

16, 2021, when Plaintiffs received the case file for the investigation pursuant to requests made under the Freedom of Information Act and the Privacy Act, the original Complaint was still filed well over one year after that date. Accordingly, Count 3 is time-barred and will be dismissed. Where the Court will grant the Motion as to Count 3 on both sovereign immunity and statute of limitations grounds, it need not and will not address Defendants' alternative arguments for dismissal of Count 3.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss will be GRANTED, and all claims will be dismissed. A separate Order shall issue.

Date:  November 30, 2023

THEODORE D. CHUANG
United States District Judge